ROB BONTA
Attorney General of California
ALICE QUINTON
Supervising Deputy Attorney General
LILA GARLINGHOUSE
Deputy Attorney General
State Bar No. 347308
600 West Broadway, Suite 1800
San Diego, CA 92101
Telephone: (619) 321-5550
Fax: (916) 732-7920
E-mail: Lila.Garlinghouse@doj.ca.gov
*Attorneys for Defendants California Department of Corrections and Rehabilitation, Dennis Diep, Christopher Blackmon, Eric Mejia, and Travis Smith*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JANE DOE,**<br><br>Plaintiff,<br><br>**v.**<br><br>**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; DENNIS DIEP, in his individual and official capacity; JASON LAMBOY, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; JEFF MACOMBER, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; ERIC MEJIA, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; CHRISTOPHER BLACKMON, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; TRAVIS SMITH, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; AND DOES 1 THROUGH 25, INCLUSIVE,**<br><br>Defendants. | 5:26-cv-06857<br><br>**NOTICE OF REMOVAL OF ACTION UNDER SECTION 28 U.S.C. § 1441(b) (Federal Question)** |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Defendants, California Department of Parks and Recreation ("CDCR"), Dennis Diep, Christopher Blackmon, Eric Mejia, and Travis Smith, ("Defendants"), pursuant to 28 U.S.C. sections 1331, 1441, and 1446, from the Superior Court of the State of California, County of San Bernardino, to the United States District Court for the Central District of California.

1. On or about June 17, 2026, this action was commenced in the Superior Court of the State of California in and for the County of San Bernardino, entitled *Jane Doe. v. California Department of Corrections and Rehabilitation, et al.*, case no. CIVRS2605539. A First Amended Complaint was filed in the same court on August 20, 2026. A true and correct copy of the operative First Amended Complaint ("FAC") is attached hereto as **Exhibit 1**.

2. The FAC names as Defendants the California Department of Corrections and Rehabilitation ("CDCR"), Dennis Diep, \Christopher Blackmon, Eric Mejia, Travis Smith, Jeff Macomber, and Jason Lamboy. To date, Jason Lamboy and Jeff Macomber have not been served.

3. The Attorney General's Office represents all of the Defendants who have been served and expects to represent Defendant, Jeff Macomber, should he be properly served in this action.

4. The served Defendants were served with copies of the FAC in this action on September 15, 2026.

5. This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331, and is one which may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(b) in that it arises under 41 U.S.C. § 2000e, *et seq*.

///

///

6. The parties have met and conferred on this and Plaintiff agrees to the removal of this case.

Dated: November 13, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
ALICE QUINTON
Supervising Deputy Attorney General

***/s/ Lila Garlinghouse***
LILA GARLINGHOUSE
Deputy Attorney General
*Attorneys for Defendants California Department of Corrections and Rehabilitation, Dennis Diep, Christopher Blackmon, Eric Mejia, and Travis Smith*

SD2026802573
68863394

# EXHIBIT 1

**GASTÉLUM LAW, APC**
Denisse O. Gastélum, Esq. (SBN 282771)
Selene Estrada-Villela (SBN 354994)
3767 Worsham Ave.,
Long Beach, CA 90808
T: +1. 213.340.6112| F: +1.213.402.8622
E: dgastelum@gastelumfirm.com | sestradavillela@gastelumfirm.com

**TONI JARAMILLA, A PROFESSIONAL LAW CORP.**
Toni J. Jaramilla (SBN 174625)
Dat Tommy Phan (SBN 316813)
Diem T. Ha (SBN 328441)
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: +1.310.551.3020 | F: +1.310.551.3019
E: toni@tjjlaw.com | dat@tjjlaw.com | diem@tjjlaw.com

Electronically Filed
Superior Court of California
County of San Bernardino
Rancho Cucamonga District
8/20/2026 12:04
By: Toni Gonzalez, DEPUTY

Attorneys for Plaintiff, JANE DOE

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN BERNARDINO**

JANE DOE,

Plaintiff,

v.

STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; DENNIS DIEP, in his individual and official capacity; JASON LAMBOY, in his official and individual capacity; JEFF MACOMBER, in his official and individual capacity; ERIC MEJIA, in his official and individual capacity; CHRISTOPHER BLACKMON, in his official and individual capacity; TRAVIS SMITH, in his official and individual capacity; and DOES 1 through 25, inclusive,

Defendants.

Case No. CIVRS2605539

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1. Sexual Harassment in Violation of the FEHA (Gov. Code § 12940)
2. Failure to Prevent Harassment in Violation of FEHA (Gov. Code § 12940(k))
3. Sexual Harassment / Hostile Work Environment in Violation of Title VII
4. Dangerous Condition of Public Property (Gov. Code § 835)
5. Negligence
6. Negligent Hiring, Supervision, Training, and Retention
7. Intentional Infliction of Emotional Distress

**DEMAND FOR JURY TRIAL**

PLAINTIFF JANE DOE[1], in support of her Complaint against Defendants, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, DENNIS DIEP, JEFF MACOMBER, ERIC MEJIA, JASON LAMBOY, CHRISTOPHER BLACKMON, TRAVIS SMITH, and DOES 1 through 25 (collectively "Defendants"), alleges as follows:

**INTRODUCTION**

1. This case concerns the egregious and flagrant conditions of the STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR") at the California Institution for Men in Chino, California. The acts and omissions of CDCR, its wardens, supervisors, and staff created and allowed unsafe workplace conditions to exist, resulting in Plaintiff being harmed. The State of California, acting by and through the CDCR is responsible for providing a reasonably safe work environment, free of sexual harassment, including sexual assault and sexual violence, as well as ensuring adequate supervision, staffing, and control of inmates. On or about August 10, 2025, while acting within the course and scope of her employment, Plaintiff was almost raped and murdered. She was violently and viciously attacked and sexually assaulted by an inmate whom she was escorting to a freezer area, a location with limited visibility. The freezer/back dock area was a known blind spot with inadequate monitoring. Despite Plaintiff notifying staff that she was escorting the inmate, CDCR staff and supervisors failed to accompany her and the inmate, supervise, monitor, or protect Plaintiff. Unbeknownst to Plaintiff, this inmate was incarcerated for committing violent offenses. Yet, CDCR allowed this inmate to be transferred to work in the CDCR kitchen which gave easy access to sharp tools and other utensils that could cause death or serious injury.

2. As a direct and proximate result of these failures, the inmate physically assaulted Plaintiff, striking her, restraining her and forcibly holding her against his body, during which he pressed his genital area against her while erect, and cutting her throat with

[1] Because this case involves the sensitive and highly personal matter surrounding an attempted rape and attempted murder by a convicted felon, Plaintiff has filed this action under a pseudonym to preserve her privacy.

a sharp object, causing severe physical injuries and emotional distress. The conduct and omissions of CDCR and its agents, including the lack of supervision, inadequate control of the inmate, and failure to respond while Plaintiff was under attack, created a dangerous condition and exposed Plaintiff to harm.

## JURISDICTION AND VENUE

3. Jurisdiction and venue are proper in this Court in accordance with Section 12965(b) of the Government Code and Section 395(a) of the California Code of Civil Procedure because the illegal conduct described herein arose in San Bernardino County, California at the California Institution for Men in Chino, California. Thus, the illegal conduct described herein arose in California, and jurisdiction and venue are appropriate in San Bernardino County or the parties were or are residents of, or are doing business in, San Bernardino County.

4. The amount in controversy in this matter far exceeds the sum of the minimal jurisdiction of this venue, exclusive of interest and costs.

## TIMELINESS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Pursuant to Government Code sections 905 and 910, Plaintiff timely submitted a claim for damages to CDCR on or about January 26, 2026.

6. On March 11, 2026, CDCR rejected the claim and this action was filed within six months of the written rejection.

7. On June 3, 2026, Plaintiff timely filed a charge with the California Civil Rights Department and subsequently received Right to Sue (RTS) letter(s). Therefore, Plaintiff has exhausted all administrative remedies for her FEHA claims.

8. Plaintiff's CRD charge alleged facts within the jurisdiction of both the CRD and the Equal Employment Opportunity Commission ("EEOC") and as such, based on information and belief, the charges were dual-filed, constructively filed, or should be deemed filed with the EEOC pursuant to applicable CRD/EEOC work-sharing procedures, thereby satisfying the administrative prerequisites for her Title VII claims.

**PARTIES**

9. Plaintiff JANE DOE is a female who at relevant times mentioned in the Complaint resides in San Bernardino County, California.

10. Defendant STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR") is, and at all relevant times was, an agency of the STATE OF CALIFORNIA that is responsible for the operation of the California state prison and parole systems, including operation of California Institution for Men ("CIM"). CDCR is liable for the acts and omissions of its employees, agents, and/or servants which give rise to Plaintiff's claims. *See* Cal. Gov. Code section 815.2(a).

11. Defendant DENNIS DIEP, at all relevant times, was a correctional officer employed by CDCR. Plaintiff is informed and believes that Defendant DIEP is a resident of San Bernardino County, California.

12. Defendant JEFF MACOMBER, at all relevant times, was the Secretary of CDCR. Pursuant to California Penal Code section 5054, the supervision, management, and control of California state prisons, including CIM, and the responsibility for the care, custody, treatment, training, discipline, and employment of persons confined therein, were vested in the Secretary of CDCR. Plaintiff is informed and believes, and thereon alleges, that Defendant MACOMBER's acts and omissions concerning CDCR policies, practices, staffing, supervision, classification, and institutional safety protocols contributed to the unsafe conditions alleged herein. At all relevant times, Defendant MACOMBER was acting within the course and scope of his employment. Defendant MACOMBER is sued in his official and individual capacity. Plaintiff is informed and believes that Defendant MACOMBER is a resident of California.

13. Defendant ERIC MEJIA, at all relevant times, was the Acting Warden of CIM and employed by CDCR. Plaintiff is informed and believes, and thereon alleges, that as Acting Warden, Defendant MEJIA was responsible for CIM's supervision, management, staffing, security, inmate supervision, inmate work assignments, and employee-safety practices, and his acts and omissions concerning those duties contributed to the unsafe

conditions alleged herein. At all relevant times, Defendant MEJIA was acting within the course and scope of his employment. Defendant MEJIA is sued in his official and individual capacity. Plaintiff is informed and believes that Defendant MEJIA is a resident of San Bernardino County, California.

14. Defendant JASON LAMBOY, at all relevant times, was a correctional Lieutenant employed by CDCR and assigned to the CIM in Chino, California. Plaintiff is informed and believes, and thereon alleges, that Defendant LAMBOY was the Lieutenant assigned to the Facility A yard where Plaintiff worked, and was responsible for the supervision of correctional staff and inmates on that yard, for ensuring a reasonably safe environment for staff, and for serving as the incident commander in the event of an emergency. At all relevant times, Defendant LAMBOY was acting within the course and scope of his employment. Defendant LAMBOY is sued in his official and individual capacity. Plaintiff is informed and believes that Defendant LAMBOY is a resident of San Bernardino County, California.

15. Defendant CHRISTOPHER BLACKMON, at all relevant times, was a correctional Lieutenant employed by CDCR and assigned to the CIM in Chino, California. Plaintiff is informed and believes, and thereon alleges, that Defendant BLACKMON was the assignment Lieutenant for the Facility A yard where Plaintiff worked, and in that role was responsible for issuing inmate work assignments and for assigning inmates to work assignments on the Facility A yard, including the culinary work program in which Plaintiff worked. Plaintiff is further informed and believes, and thereon alleges, that Defendant BLACKMON's responsibilities included reviewing an inmate's file, history, and classification before assigning the inmate to a work assignment and ensuring that relevant information concerning an assigned inmate was conveyed to the staff who would work with that inmate. At all relevant times, Defendant BLACKMON was acting within the course and scope of his employment. Defendant BLACKMON is sued in his official and individual capacity. Plaintiff is informed and believes that Defendant BLACKMON is a resident of San Bernardino County, California.

16. Defendant TRAVIS SMITH was, at all relevant times, a correctional Sergeant employed by CDCR and assigned to the CIM in Chino, California. Plaintiff is informed and believes, and thereon alleges, that Defendant SMITH served as the Program Sergeant for the Facility A yard where Plaintiff worked and shared supervisory responsibility over the yard, including the culinary area, with the Yard Sergeant. As the Program Sergeant, Defendant SMITH was responsible for the supervision of correctional staff and inmates and for ensuring the safety of staff working on the yard. At all relevant times, Defendant SMITH was acting within the course and scope of that employment and is sued in his official and individual capacity. Plaintiff is informed and believes that Defendant SMITH is a resident of San Bernardino County, California.

17. Plaintiff is informed and believes and thereon alleges, that there is a Sergeant, whose name is currently unknown, who was, at all relevant times mentioned herein, a correctional Sergeant employed by CDCR and assigned to the CIM in Chino, California. This Sergeant whose name is unknown, was the “Culinary Sergeant” and was one of Defendant DIEP’s direct supervisors in the culinary and food service operations in which Plaintiff worked. As the Culinary Sergeant, he/she was responsible for the supervision of correctional staff and inmates assigned to culinary operations and for ensuring the safety of staff working in those areas. At all relevant times, this Culinary Sergeant was acting within the course and scope of that employment and is sued in his or her official and individual capacity. The true name and capacity of this Defendant are presently unknown to Plaintiff. Once identified, Plaintiff will amend DOE 1 with the identity of this defendant.

18. Plaintiff is informed and believes and thereon alleges, that there is another Sergeant whose name is currently unknown, and was, at all relevant times mentioned herein, a correctional Sergeant employed by CDCR and assigned to the CIM in Chino, California. This Sergeant whose name is currently unknown, served as the “Yard Sergeant” for the Facility A yard where Plaintiff worked and was one of the direct supervisors of Defendant DENNIS DIEP. As the Yard Sergeant, this Defendant was responsible for

overseeing the operations of the yard, including the culinary area, for responding to issues and emergencies arising on the yard, and for ensuring the safety of staff working on the yard. At all relevant times, this Defendant was acting within the course and scope of that employment and is sued in his or her official and individual capacity.

19. The true name and capacity of this Defendant are presently unknown to Plaintiff. Once identified, Plaintiff will amend DOE 2 with the identity of this Defendant.

20. Plaintiff is ignorant of the true names and capacities of Defendants sued as DOES 1 through 25, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants is or was responsible in some manner for the acts and omissions alleged herein.

## FACTUAL ALLEGATIONS

21. At all relevant times, Plaintiff was employed by Defendant STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR") as a Correctional Supervising Cook at the California Institution for Men in Chino, California. In the course and scope of her employment, Plaintiff was required to interact with and supervise inmates while performing her assigned duties. CDCR, in turn, was responsible for maintaining a reasonably safe workplace for its employees, free of sexual harassment, sexual assault and violence, as well as providing adequate supervision, security, and protection in areas known to present heightened security risks.

22. At all relevant times, inmates were regularly assigned to work in the kitchen and food preparation areas alongside staff, where they had access to kitchen tools and equipment, including sharp objects. These areas required heightened supervision and security measures to ensure the safety of staff working in close proximity to inmates.

23. On or about August 10, 2025, at approximately 1:15 p.m., an inmate, whom Plaintiff is informed and believes to be Roland Manning, viciously attacked her while she escorted him to the freezer area to place ice buckets inside.

24. Plaintiff had just returned from maternity leave. Meanwhile, CDCR assigned Manning as a kitchen worker, even though it knew or should have known that Manning was a violent felon with mental health issues. Plaintiff is informed and believes, and thereon alleges, that on August 10, 2025, Manning reported for kitchen duties on a day he was not scheduled to work, and that Defendant DIEP, a correctional officer, and defendants JEFF MACOMBER, ERIC MEJIA, JASON LAMBOY, CHRISTOPHER BLACKMON, and TRAVIS SMITH, management and supervisory employees, permitted Manning to do so in violation of CDCR policies and procedures.

25. Plaintiff is informed and believes, and thereon alleges, that inmate Manning had a documented history of serious mental health needs and, prior to the incident, was housed in a facility and/or housing unit designated for inmates requiring a higher level of mental health care and supervision, otherwise known as the Enhanced Outpatient Program (EOP).

26. Plaintiff is informed and believes, and thereon alleges, that prior to the incident, Manning's mental health level of care was lowered from the EOP level of care to the Correctional Clinical Case Management System (CCCMS) level of care, and/or his custody classification was reduced. Plaintiff is further informed and believes, and thereon alleges, that, as compared to the EOP level of care, the CCCMS level of care does not require the same degree of monitoring, observation, and staff oversight, and that this change in Manning's level of care and/or custody classification permitted him to be transferred and assigned to the culinary work program in which Plaintiff worked.

27. The decision to reduce Manning's classification and to approve his placement in the culinary work program was made by a classification committee and/or by CDCR classification staff whose identities are presently unknown to Plaintiff and who are sued herein as DOE Defendants. Plaintiff is further informed and believes that this decision was made without adequate consideration of Manning's documented history of concerning and predatory conduct, including his prior conduct toward female staff at the CIM.

28. Accordingly, Manning was not properly eligible or suited for assignment to the culinary work program, but, due to the actions of Defendants, he was permitted to be present and to work in that program on the date of the incident notwithstanding, and Defendants failed to follow applicable CDCR classification, custody, housing, and work-assignment policies and procedures in permitting Manning access to the area in which Plaintiff worked.

29. Plaintiff is informed and believes, and thereon alleges, that Defendant CHRISTOPHER BLACKMON, as the assignment Lieutenant for the Facility A yard, assigned and/or approved inmate Manning to work in the culinary work program in which Plaintiff worked. Plaintiff is further informed and believes, and thereon alleges, that in making that assignment, Defendant BLACKMON failed to review Manning's file, history, and classification, which reflected Manning's documented history of serious mental health needs and concerning predatory conduct, and failed to ensure that this information was conveyed to the culinary staff who would be working with Manning, including Plaintiff. Plaintiff is informed and believes, and thereon alleges, that had Defendant BLACKMON reviewed Manning's file, history, and classification, or conveyed that information to the culinary staff, Manning should not have been assigned to the culinary work program and/or Plaintiff would have been warned of the danger Manning posed.

30. Before the incident, Manning approached Plaintiff in her office and stated that he had ice buckets to place in the freezer. Plaintiff told Manning to proceed to the freezer. She then notified Defendant DIEP, who was on duty and seated at his desk in their shared office, that she planned to escort Manning to the back dock area to put the ice buckets inside the freezer. Defendant DIEP did not stand up, supervise, or position himself where he could see or monitor her. He remained in his office and failed to monitor Plaintiff as she entered the back dock area, which is a known blind spot.

31. At all relevant times, Defendant DENNIS DIEP was supervised by one or more correctional Sergeants, including the Program Sergeant (named herein as Defendant TRAVIS SMITH), as well as the Culinary Sergeant and the Yard Sergeant (whose

identities, when determined, will replace DOE 1 and DOE 2), and by a correctional Lieutenant (Defendant JASON LAMBOY), each of whom was responsible for supervising correctional staff and inmates on the yard and in the culinary area and for ensuring that adequate staffing, supervision, and safety measures were in place to protect staff, including Plaintiff.

32. Moreover, the culinary area in which Plaintiff worked was assigned only a single correctional officer, and Defendants knew this area was a known blind spot with limited visibility, and that the area was chronically understaffed. Defendants were aware of the heightened risk to staff safety created by these conditions and nonetheless failed to provide adequate staffing, supervision, or security to protect Plaintiff and other staff from the foreseeable risk of inmate violence.

33. Plaintiff is informed and believes, and thereon alleges, that Defendants MACOMBER and MEJIA were responsible for establishing, implementing, maintaining, supervising, and/or enforcing CDCR and CIM policies and practices concerning inmate classification, inmate work assignments, staffing, supervision, emergency response, and staff-safety protocols in areas where inmates worked with CDCR employees, including the culinary area where Plaintiff worked. Plaintiff is further informed and believes, and thereon alleges, that their acts and omissions concerning those duties contributed to the unsafe conditions alleged herein.

34. Only Plaintiff and Manning were in the back dock area when Plaintiff unlocked the freezer. Manning suddenly attacked her from behind, striking her in the head. He grabbed her by the chin, lifted her off her feet, and pressed her body tightly against his. While restraining Plaintiff in this manner, Plaintiff felt Manning's genital area pressed against her and observed that he had an erection.

35. A violent struggle followed. Manning held a sharp object to her throat and cut her, causing significant bleeding. During the course of the assault, Manning also pulled or tugged at Plaintiff's clothing, including her pants, while she struggled to escape. Plaintiff fought back, screamed for help, attempted to use the lock she still held in her hand, and

tried to break free as Manning continued to overpower her due to his size and strength. Plaintiff eventually freed her arm and activated her state-issued alarm.

36. Plaintiff managed to break free and ran toward the kitchen while bleeding heavily and holding her neck wound. Multiple inmates were present in the area. Defendant DIEP exited his office only after Plaintiff re-entered the kitchen. She told Defendant DIEP she needed help before Manning reached her again. Instead of rendering aid or securing Plaintiff from other inmates, Defendant DIEP passed her and exited the kitchen toward Manning, leaving Plaintiff unsupervised and without immediate medical assistance.

37. Plaintiff is informed and believes, and thereon alleges, that the correctional supervisor or supervisors responsible for responding to emergencies on the Facility A yard, including Defendant JASON LAMBOY, failed to be present, failed to timely respond, and/or failed to properly command the emergency response, thereby further delaying assistance and medical aid to Plaintiff during and after the assault.

38. Plaintiff is informed and believes, and thereon alleges, that prior to the incident, Defendants, including management, supervisory, and correctional staff, knew or should have known that inmate Manning exhibited erratic and concerning behavior to other CDCR female employees. Plaintiff is further informed and believes, and thereon alleges, that at least one female correctional officer had previously reported Manning for inappropriate or concerning behavior, and that another female staff member had him removed from the law library on multiple occasions due to similar offensive conduct. Plaintiff is further informed and believes, and thereon alleges, that Manning had previously committed a similarly violent assault against another female prior to his placement at this facility. Despite such knowledge, Defendants did not take prompt, unbiased, or immediate action to investigate Manning, notwithstanding reports of his erratic, offensive, and concerning behavior toward other females working at CDCR. Defendants failed to take reasonable measures to protect Plaintiff and did not provide a safe, harassment-free work environment, free of sexual harassment, sexual assault and violence.

39. The conditions described herein, including the use of inmate labor in kitchen areas involving sharp tools, the requirement that staff escort inmates into blind spot locations, and the absence of supervision during such escorts, and Defendants' failure to immediately investigate complaints and reports of inmate Manning's inappropriate and concerning behavior toward other female employees created a dangerous environment for staff. Despite these risks, Defendants failed to implement, follow, and enforce basic safety measures, including adequate monitoring and timely response to emergencies.

40. Plaintiff is further informed and believes, and thereon alleges, that before the incident involving Plaintiff, CDCR was aware of prior incidents in which inmate-workers assigned to institutional work roles isolated, assaulted, or attempted to sexually assault female CDCR employees in enclosed, concealed, or inadequately monitored areas. These incidents included an assault by a different inmate-worker against a female CDCR employee with the same job title as Plaintiff in a utility closet or similarly isolated area, and an incident in or around 2021 on the Charlie Yard in which a female clinical employee was barricaded inside her office by an inmate-worker assigned as a porter to perform cleaning duties in an attempted sexual assault. These prior incidents placed CDCR on notice of the foreseeable risk that inmate-workers could isolate, confine, sexually assault, or otherwise endanger female staff members in enclosed, concealed, or inadequately monitored areas.

41. Plaintiff is informed and believes, and thereon alleges, that the freezer/back dock area at the CIM constituted a dangerous condition of public property because its physical layout created a concealed blind spot with limited visibility from the kitchen, officer station, and other staffed areas. Plaintiff is further informed and believes, and thereon alleges, that the area lacked adequate cameras, mirrors, sight lines, monitoring devices, or other safety features to permit correctional staff to observe inmate escorts into that location. This condition created a reasonably foreseeable risk that an inmate could isolate and assault a staff member without timely observation or intervention. CDCR knew or should have known of the condition before the incident, and in flagrant disregard, failed to correct it or implement reasonable protective measures.

42. Plaintiff is informed and believes, and thereon alleges, that the conduct described herein was not an isolated incident, but rather the result of systemic deficiencies in hiring, staffing, training, supervision, and enforcement of safety protocols within CDCR facilities.

43. As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered severe physical injuries, pain and suffering, and emotional distress. Plaintiff has also sustained and continues to sustain economic and non-economic damages, and ongoing psychological trauma.

**FIRST CAUSE OF ACTION**

**Sexual Harassment in Violation of FEHA**

**(Cal. Gov. Code § 12940, *et seq.*)**

**(Against Defendants CDCR and DOES 1–25)**

44. Plaintiff realleges and incorporates by reference each and every allegation contained in all of the preceding paragraphs as though fully set forth herein.

45. Government Code section 12940(j) prohibits harassment in employment based on protected characteristics, including sex and gender.

46. Gov. Code § 12940(j)(1) provides that an employer may be responsible for harassment by "nonemployees" against employees if the employer, or its agents or supervisors, knew or should have known of the conduct and failed to take immediate and appropriate corrective action.

47. At all relevant times, Plaintiff was an employee of Defendant CDCR and was a member of a protected class, based on her sex and gender.

48. As alleged herein, Plaintiff was subjected to unwelcome harassing conduct based on her gender, including severe and offensive physical conduct by inmate-worker Manning during the assault. Such conduct included striking, restraining, pressing his body tightly against Plaintiff, pressing his genital area against Plaintiff while erect, and pulling or tugging at Plaintiff's clothing, including her pants, while she attempted to escape.

49. The harassing conduct was severe or pervasive.

50. A reasonable person, who is female, in Plaintiff's circumstances, would have considered the work environment to be hostile, intimidating, offensive, or abusive.

51. Plaintiff considered the work environment to be hostile, intimidating, offensive, or abusive, and indeed dangerous.

52. Defendants knew or should have known of the risk of such conduct, including based on prior reports of Manning's behavior toward female staff, prior incidents involving his conduct within the facility, and his history of assaultive conduct, and nevertheless failed to take reasonable steps to prevent or correct the conduct.

53. Plaintiff was harmed, and Defendants' conduct was a substantial factor in causing Plaintiff's harm.

54. As a direct and proximate result of Defendants' conduct, as alleged herein, Plaintiff has suffered and will continue to suffer economic, physical and emotional injuries, including, but not limited to, lost wages, and emotional distress damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

55. As a direct and proximate result of Defendants' conduct, as alleged herein, Plaintiff has been compelled to retain legal counsel and is entitled to reasonable attorneys' fees and costs of suit, pursuant to California Government Code §§ 12940, 12965 subdivision (b) as well as other applicable statutes.

**SECOND CAUSE OF ACTION**

**Failure to Prevent Harassment in Violation of FEHA**

**(Cal. Gov. Code § 12940(k))**

**(Against Defendants CDCR and DOES 1–25)**

56. Plaintiff realleges and incorporates by reference each and every allegation contained in all of the preceding paragraphs as though fully set forth herein.

57. California Government Code § 12940, subdivision (k) provides that it is an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination, harassment and retaliation from occurring. Defendants' conduct,

as described above, constitutes a failure to take all reasonable steps necessary to prevent discrimination in violation of California Government Code § 12940, subdivision (k).

58. Gov. Code § 12940(j)(1) provides that an employer may be responsible for harassment by “nonemployees” against employees if the employer, or its agents or supervisors, knew or should have known of the conduct and failed to take immediate and appropriate corrective action.

59. As alleged herein, Plaintiff was subjected to severe and unwelcome harassment based on her sex and gender, including violent and sexually invasive physical conduct by inmate-worker Manning, including striking, restraining, forcibly holding Plaintiff against his body, pressing his genital area against her while erect, pulling or tugging at Plaintiff’s clothing, and cutting her throat with a sharp object.

60. Defendants knew or should have known of the risk of such harassment, including prior reports of Manning’s behavior toward female staff, Manning’s history of assaultive conduct toward a female, and the known risks associated with requiring staff to escort inmates into unsupervised or blind spot areas.

61. Plaintiff is informed and believes, and thereon alleges, that Defendants failed to take all reasonable steps to prevent harassment against Plaintiff, including but not limited to: failing to provide adequate supervision; failing to monitor Plaintiff during the escort; failing to take reasonable measures to prevent foreseeable inmate sexual harassment and assault; failing to intervene while Plaintiff was under attack; and failing to implement and enforce appropriate safety protocols.

62. Plaintiff was harmed, and Defendants’ conduct was a substantial factor in causing Plaintiff’s harm.

63. As a direct and proximate result of Defendants’ conduct, as alleged herein, Plaintiff has suffered and will continue to suffer economic, physical and emotional injuries, including, but not limited to, lost wages, and emotional distress damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

64. As a direct and proximate result of Defendants' conduct, as alleged herein, Plaintiff has been compelled to retain legal counsel and is entitled to reasonable attorneys' fees and costs of suit, pursuant to California Government Code §§ 12940, 12965 subdivision (b) as well as other applicable statutes.

**THIRD CAUSE OF ACTION**

**Sexual Harassment and Hostile Work Environment in Violation of Title VII**

**(42 U.S.C. § 2000e-2(a)(1))**

**(Against Defendants CDCR and DOES 1–25)**

65. Plaintiff realleges and incorporates by reference each and every allegation contained in all of the preceding paragraphs as though fully set forth herein.

66. At all relevant times, Plaintiff was an employee of Defendant CDCR within the meaning of Title VII.

67. At all relevant times, Defendant CDCR was an employer within the meaning of Title VII and was prohibited from subjecting Plaintiff to sexual harassment and a hostile work environment because of her sex, gender, and/or female status.

68. Plaintiff was subjected to unwelcome sexual harassment and a hostile work environment when inmate-worker Manning sexually assaulted, attacked, restrained, and physically overpowered Plaintiff while she was performing her assigned duties at CIM.

69. The harassment was based on Plaintiff's sex, gender, and/or female status. During the assault, Manning pressed his genital area against Plaintiff while erect, restrained her body against his, cut her throat, and pulled or tugged at her clothing while Plaintiff struggled to escape.

70. CDCR knew or should have known that Plaintiff and other female employees were at risk of sex-based harassment, sexual assault, and violence by inmates, including Manning, based on prior reports and incidents involving inmate misconduct toward female staff, Manning's prior concerning and predatory conduct toward female staff, and the known risks created by requiring female employees to work with or escort inmates in concealed, isolated, or inadequately monitored areas.

71. CDCR failed to take immediate, appropriate, and reasonable corrective action to prevent, stop, or remedy the harassment and hostile work environment, including by failing to properly classify, restrict, monitor, supervise, investigate, or remove Manning from the culinary work program, and by failing to provide adequate staffing, monitoring, and safety measures in known blind-spot areas.

72. The harassment was sufficiently severe to alter the terms, conditions, and privileges of Plaintiff's employment and to create an abusive, hostile, dangerous, and intimidating work environment.

73. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injuries, emotional distress, economic damages, non-economic damages, and other damages according to proof.

74. Plaintiff is entitled to recover reasonable attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. § 2000e-5(k), and any other applicable law.

## **FOURTH CAUSE OF ACTION**

**Dangerous Condition of Public Property**

**(Cal. Gov. Code § 835)**

**(Against Defendants CDCR and DOES 1–25)**

75. Plaintiff realleges and incorporates by reference each and every allegation contained in all of the preceding paragraphs as though fully set forth herein.

76. At all relevant times, Defendant CDCR owned, operated, maintained, managed, and/or controlled the CIM, including the culinary area, kitchen, freezer, and back dock area where Plaintiff was attacked.

77. At the time of the incident, the freezer/back dock area constituted a dangerous condition of public property within the meaning of Government Code section 835 because its physical layout created a concealed and inadequately monitored blind spot with limited visibility from the kitchen, officer station, and other staffed areas.

78. Plaintiff is informed and believes, and thereon alleges, that the freezer/back dock area lacked adequate cameras, mirrors, sight lines, windows, monitoring devices, or

other safety features to permit correctional staff to observe staff members escorting inmates into that location.

79. The dangerous condition created a reasonably foreseeable risk that an inmate could isolate, assault, sexually assault, or otherwise harm a staff member without timely observation or intervention.

80. Plaintiff is informed and believes, and thereon alleges, that CDCR knew or should have known of the dangerous condition before the incident because the freezer/back dock area was a known blind spot, staff were required or permitted to escort inmates into that area, inmates assigned to culinary work had access to kitchen tools and sharp objects, and CDCR was aware of prior incidents involving inmate violence against female staff members in isolated or inadequately monitored areas.

81. Plaintiff is further informed and believes, and thereon alleges, that the dangerous condition was created and/or maintained by the negligent or wrongful acts or omissions of CDCR's employees, agents, supervisors, managers, and DOES 1 through 25, who were acting within the course and scope of their employment.

82. CDCR had actual or constructive notice of the dangerous condition a sufficient time before Plaintiff's injuries to have taken reasonable measures to protect against it, including by correcting the blind spot, installing cameras or mirrors, improving sight lines or monitoring, restricting inmate access, requiring additional escort procedures, providing adequate staffing, or implementing other reasonable safety measures.

83. CDCR failed to correct, remedy, safeguard against, or warn of the dangerous condition, and failed to implement reasonable protective measures despite the foreseeable risk of harm to Plaintiff and other staff.

84. The dangerous condition was a substantial factor in causing Plaintiff's injuries because it allowed Manning to isolate and attack Plaintiff outside the view of correctional staff, delayed observation and intervention, and prevented a timely response during the assault.

85. As a direct and proximate result of the dangerous condition of public property and Defendants' acts and omissions, Plaintiff suffered severe physical injuries, emotional distress, economic damages, non-economic damages, and other damages according to proof.

**<u>FIFTH CAUSE OF ACTION</u>**

**Negligence**

**(Against all Defendants)**

86. Plaintiff realleges and incorporates by reference each and every allegation contained in all of the preceding paragraphs as though fully set forth herein.

87. At all relevant times herein, Plaintiff was employed by CDCR and was acting within the course and scope of her employment. Plaintiff's safety, supervision, and protection while interacting with inmates were entrusted to Defendants, including CDCR and DOES 1 through 25.

88. Defendants owed Plaintiff a duty to exercise reasonable care in the supervision, protection, and control of inmates, and to maintain a reasonably safe work environment. Defendants further owed Plaintiff a duty to take reasonable measures to protect her from foreseeable harm, including the risk of violent assault by inmates.

89. At all relevant times, the acts and omissions alleged herein were committed by employees of Defendants acting within the course and scope of their employment. CDCR is therefore liable for such acts and omissions pursuant to Government Code section 815.2.

90. Defendants knew or should have known that requiring staff to interact with inmates in areas involving limited visibility, sharp objects, and close physical proximity created a foreseeable risk of serious harm. Defendants further knew or should have known that the inmate involved in the incident posed a heightened danger to staff, including based on prior reports of erratic behavior and conduct toward female staff, and his history of assaultive conduct, yet nevertheless permitted him to work in the kitchen and be escorted into an unsupervised area.

91. Defendants breached their duties of care to Plaintiff by, among other things, failing to provide adequate supervision or monitoring when Plaintiff escorted the inmate into a known blind spot; failing to accompany or observe the escort despite receiving notice; failing to take reasonable measures to prevent an inmate with a known history of assaultive behavior from working in the kitchen; failing to implement or enforce adequate safety protocols designed to protect staff from inmate violence; failing to take reasonable precautions to protect Plaintiff from a known risk of harm.

92. Defendants further breached their duties by failing to timely respond to Plaintiff's alarm and pleas for help during and after the assault, failing to render immediate aid, and leaving Plaintiff exposed to further danger while injured and vulnerable.

93. Defendants also breached their duties by failing to take appropriate action, including investigating, despite prior knowledge of the inmate's erratic and concerning behavior, including conduct toward correctional staff, and by failing to protect Plaintiff in light of such known risks.

94. As a proximate, direct and legal result of the acts and omissions mentioned herein by Defendants, and each of them, Plaintiff has suffered severe injuries as well as general, special, actual and compensatory damages as alleged herein including, but not limited to, depression, anxiety, humiliation, embarrassment, isolation, social withdrawal, loss of enjoyment of life, trauma and extreme emotional distress. Plaintiff has incurred and will incur future medical and other related expenses and has sustained special and general damages in an amount according to proof, but in excess of the jurisdictional minimum of the court.

## SIXTH CAUSE OF ACTION

### Negligent Hiring, Supervision, Training and Retention

### (Against Defendants CDCR and DOES 1–25)

95. Plaintiff realleges and incorporates by reference each and every allegation contained in all of the preceding paragraphs as though fully set forth herein.

96. At all relevant times, Plaintiff was employed by CDCR and, while performing her job duties, was required to interact with inmates under the custody, supervision, and control of Defendants. As a result, Defendants owed Plaintiff a duty to provide a reasonably safe work environment and to protect her from foreseeable harm caused by inmates and correctional staff.

97. Defendants owed Plaintiff a duty to exercise reasonable care in the hiring, training, supervision, and retention of correctional officers, staff, and agents, including those responsible for supervising inmates and ensuring staff safety in inmate-accessible areas.

98. At all relevant times, the acts and omissions alleged herein were committed by employees of Defendants acting within the course and scope of their employment. CDCR is therefore liable for such acts and omissions pursuant to Government Code section 815.2.

99. Defendants further had a duty to properly train and supervise correctional staff regarding inmate supervision, escort procedures, monitoring requirements in high-risk or blind spot areas, and the obligation to respond promptly to alarms and protect staff from foreseeable inmate violence.

100. Defendants breached their duties by, among other things, failing to provide adequate supervision or monitoring when Plaintiff escorted the inmate into a known blind spot; failing to accompany or observe the escort despite receiving notice; failing to take reasonable measures to prevent an inmate with a known history of assaultive behavior from working in the kitchen; failing to implement or enforce adequate safety protocols designed to protect staff from inmate violence; failing to take reasonable precautions to protect Plaintiff from a known risk of harm.

101. Defendants further breached their duties by failing to take appropriate action despite knowledge of the inmate’s erratic and concerning behavior, including prior conduct toward correctional staff, and by failing to protect Plaintiff in light of such known risks.

102. Defendants also breached their duties by failing to respond appropriately to Plaintiff's alarm and requests for assistance, failing to render aid, and leaving Plaintiff exposed to continued danger while injured and vulnerable.

103. As a proximate, direct and legal result of the acts and omissions mentioned herein by Defendants, and each of them, Plaintiff has suffered severe injuries as well as general, special, actual and compensatory damages as alleged herein including, but not limited to, depression, anxiety, humiliation, embarrassment, isolation, social withdrawal, loss of enjoyment of life, trauma and extreme emotional distress. Plaintiff has incurred and will incur future medical and other related expenses and has sustained special and general damages in an amount according to proof, but in excess of the jurisdictional minimum of the court.

## SEVENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against all Defendants)

104. Plaintiff realleges and incorporates by reference each and every allegation contained in all of the preceding paragraphs as though fully set forth herein.

105. Defendants' conduct was outrageous, including knowingly failing to supervise or protect Plaintiff despite prior reports of Manning's dangerous behavior and conduct toward female staff, permitting Manning to work in the kitchen and be escorted into an unsupervised area, and failing to intervene or respond while Plaintiff was violently attacked, physically restrained, subjected to sexually invasive physical contact, and cut on the neck while performing her duties.

106. Defendants acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, including ignoring known risks associated with Manning's conduct, failing to prevent his interaction with Plaintiff, and failing to respond to Plaintiff's alarm and pleas for help while she was under attack.

107. Plaintiff suffered severe emotional distress, including trauma, fear for her life, humiliation, anxiety, and ongoing psychological harm.

108. Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional distress.

109. As a direct and proximate result of Defendants' conduct, as alleged herein, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including, but not limited to, lost wages, and emotional distress damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief as follows:

1. For general damages, including emotional distress damages, according to proof on each cause of action for which such damages are available;

2. For special damages, according to proof on each cause of action for which such damages are available;

3. For compensatory damages, including emotional distress damages, according to proof on each cause of action for which such damages are available;

4. For injunctive relief as appropriate and permitted by law;

5. For pre-judgment interest according to law;

6. For attorneys' fees and costs of suit as allowed by law;

7. For such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

Dated: August 20, 2026 **GASTÉLUM LAW, APC**

By: <u>*/s/ Denisse O. Gastélum*</u>
Denisse O. Gastélum
Selene Estrada-Villela
Attorneys for Plaintiff,
JANE DOE

Dated: August 20, 2026 **TONI JARAMILLA, APLC**

By: <u>*/s/Toni J. Jaramilla*</u>
Toni J. Jaramilla
Dat Tommy Phan
Diem Ha
Attorneys for Plaintiff,
JANE DOE

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial on all issues triable to a jury.

Respectfully Submitted,

Dated: August 20, 2026

**GASTÉLUM LAW, APC**

By: *<u>/s/ Denisse O. Gastélum</u>*
Denisse O. Gastélum
Selene Estrada-Villela
Attorneys for Plaintiff,
JANE DOE

Dated: August 20, 2026

**TONI JARAMILLA, APLC**

By: *<u>/s/Toni J. Jaramilla</u>*
Toni J. Jaramilla
Dat Tommy Phan
Diem Ha
Attorneys for Plaintiff,
JANE DOE

# DECLARATION OF SERVICE BY E-MAIL

**Case Name:** Doe v. California Department of Corrections and Rehabilitation, et al.
**Case Number:** 5:26-cv-06857
**Party Represented:** Department of Corrections and Rehabilitation

**Declaration of Electronic Service**

1. I am at least 18 years of age and not a party to this matter.

2. I am employed in the Office of the Attorney General of the State of California. My business address is 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, County of San Francisco.

3. My electronic service address is Giomara.Guardado@doj.ca.gov.

4. On November 13, 2026, I electronically served the following document[s]:

   a. **NOTICE OF REMOVAL OF ACTION UNDER SECTION 28 U.S.C. § 1441(b) (Federal Question)**

5. I electronically served the aforementioned document[s] by emailing them to the following individual[s]:

E-Mail Address:
dgastelum@gastelumfirm.com
toni@tjjlaw.com
kaguilar@gastelumfirm.com
dat@tjjlaw.com
sestradavillela@gastelumfirm.com
diem@tjjlaw.com

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on November 13, 2026.

| G. Guardado | */s/ G. Guardado* |
|---|---|
| Declarant | Signature |

SD2026802573
45480959